IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW M. MUSAELIAN, MARY C. MUSAELIAN, and MICHAEL A. MUSAELIAN,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>SONOMA COUNTY SHERIFF'S DEPT., and ELIZABETH WARREN, Civil Manager,<br><br>　　　　　Defendants.<br>　　　　　　　　　　　　　　　　　　　／ | No. C 07-00806 SI<br><br>**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS; GRANTING REQUEST FOR JUDICIAL NOTICE** |

Defendants have filed a motion to dismiss the complaint. The motion is scheduled for hearing on June 29, 2007. Pursuant to Civil Local Rule 7-1(b), the Court determines that the matter is appropriate for resolution without oral argument, and VACATES the hearing. For the reasons set forth below, the Court GRANTS the motion in part and DENIES the motion in part.

**BACKGROUND**

Plaintiffs Andrew, Mary, and Michael Musaelian allege that defendant Elizabeth Warren was, at all relevant times, acting in the course and scope of her employment as the Civil Bureau Manager for defendant Sonoma County Sheriff's Department ("SCSD"). Complaint ¶¶ 4-5.[1] Plaintiffs allege that on or about February 15, 2005, Warren, acting under color of state law, issued a Notice of Sheriff's Sale on Real Property ("Notice"), and negligently caused it to be posted on plaintiffs' residence located at 4768 Devonshire Place, Santa Rosa. *Id.* ¶ 7. Thereafter, plaintiffs claim the Notice was posted at the

---

[1] Most of the following facts are taken from the plaintiffs' complaint, the allegations of which must be taken as true at this stage. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

1 Sonoma County Courthouse, and published in a local newspaper. *Id.* According to plaintiffs, the Notice
2 stated that it was based on a Writ of Execution dated November 15, 2001, and that defendants "have
3 levied on all rights, title, claim and interest of plaintiff ANDREW MUSAELIAN in the real property."
4 *Id.* ¶ 8. Plaintiffs allege that defendant Warren failed to "record a Notice of Levy as required by law."
5 *Id.* Plaintiffs also allege that the Writ of Execution expired on May 25, 2002, and was not renewed, and
6 that defendants "failed to comply with the statutory requirements for issuing a Notice." *Id.* ¶ 9.
7 Plaintiffs allege that Andrew and Mary Musaelian received a final discharge in a Chapter 13 Bankruptcy
8 case on December 6, 2004. *Id.* Plaintiffs further allege that defendant Warren was aware that the
9 bankruptcy case had been closed at the time of the levy.

10 In response to these alleged wrongs, plaintiffs filed a timely claim with the appropriate agency
11 in compliance with the California Tort Claims Act presentment requirements. Complaint ¶ 6. The claim
12 was rejected on August 31, 2005. *Id.* Plaintiffs filed a claim in California state court within six months,
13 on February 27, 2006, alleging Abuse of Process, Defamation, and Negligence. *See* RJN[2], Ex. A. That
14 case was voluntarily dismissed on July 6, 2006. *See* RJN, Ex. B.

15 Plaintiffs filed this lawsuit on February 8, 2007, alleging claims under title 42 U.S.C. section
16 1983 for violation of the Fourteenth Amendment of the United States Constitution, and state-law claims
17 for Abuse of Process, Defamation, Intentional Infliction of Emotional Distress, and Negligence.
18 Defendants now move to dismiss the state-law claims for failure to comply with the California Tort
19 Claims Act, and in the alternative because defendants are entitled to absolute privilege. Defendants also
20 move to dismiss the section 1983 claims as to all defendants for failure to allege unequal treatment, and
21 as to defendant SCSD for failure to allege *Monell* liability.

**LEGAL STANDARD**

24 Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it
25 fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss
26 is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer

---

[2] The Court hereby GRANTS defendants' Request for Judicial Notice ("RJN") [Docket No. 13].

evidence in support of the claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984).

In answering this question, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Even if the face of the pleadings suggests that the chance of recovery is remote, the Court must allow the plaintiff to develop the case at this stage of the proceedings. *See United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

### I.  California Tort Claims Act statute of limitations

Defendants argue that plaintiffs' state-law claims are barred by failure to comply with the presentment requirements of the California Tort Claims Act. In particular, defendants argue that plaintiffs failed to file this suit within the six month time-frame mandated by section 945.6(a)(1) of the California Government Code.

The California Tort Claims Act determines the circumstances under which governmental entities and employees can be sued. It provides that "no suit for money or damages may be brought against a public entity [or employee] on a cause of action until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board . . . ." Cal. Gov. Code § 945.4. If the claim is rejected, the public entity must provide written notice. *See id.* § 913. Section 913 requires that the rejection notice state, in pertinent part:

> Subject to certain exceptions, you have only six (6) months from the date this notice was personally delivered or deposited in the mail to file a court action on this claim. See Government Code Section 945.6.

*Id.* Once the notice of rejection is given, the statute of limitations section is triggered. Subject to a few

3

exceptions,

> any suit brought against a public entity on a cause of action for which a claim is required to be presented in accordance with [§§ 900-915] . . . must be commenced:
>
> (1) If written notice is given in accordance with Section 913, not later than six months after the date such notice is personally delivered or deposited in the mail.

Cal. Gov. Code § 945.6. Courts generally construe the California Tort Claims Act statute of limitations strictly. *See Doe v. Petaluma City School District*, 830 F. Supp. 1560 (N.D. Cal. 1993); *Anson v. County of Merced*, 202 Cal. App. 3d 1195 (Cal. Ct. App. 1988); *Smith v. City and County of San Francisco*, 68 Cal. App. 3d 227, 231 (Cal. Ct. App. 1977). Although California law provides for equitable tolling during the pendency of litigation in another forum, the statute of limitations is only tolled while the first suit is pending. *See Martell v. Antelope Valley Medical Center*, 67 Cal. App. 4th 978, 985 (2d Dist. 1998). After voluntary dismissal, the six month period starts to run again, from where it left off, and applies to state-law claims in any forum. *See id.*

Here, defendants do not contest that plaintiffs presented a timely written claim to the appropriate state agency in accordance with section 945. According to plaintiffs, that claim was rejected on August 31, 2005. *See* Complaint ¶ 6. Plaintiffs do not allege that the notice of rejection failed to comply with the law; plaintiffs were aware of the six month statute of limitations and filed in state court for the state-law claims on February 27, 2006. *See* Opposition at 2. Defendants argue that because plaintiffs filed the original complaint 180 days after the tort claim was rejected, upon dismissal they had only two days left of the total 182 day limitations period in which to file this suit in federal court. Plaintiffs undisputedly failed to do so.

Plaintiffs respond that they complied with the requirements of the California Tort Claims Act by filing the original case in state court within six months, and therefore the current action is timely under the statute of limitations for ordinary torts. Opposition at 2. A similar argument was made in *Martell*, 67 Cal. App. 4th at 981, wherein appellants contended that having once satisfied section 945.6 by filing their initial claim they were released from any obligation to comply with the six month statute of limitations in future actions based on the same claims. In that case, the plaintiffs voluntarily dismissed their original timely complaint and waited several years to refile. *Id.* The court adopted the respondent's argument, holding that "*any* suit brought against a public entity must be filed no more than

six months after the pubic entity rejects the claim." *Id.* (emphasis in original) (internal quotations omitted). Here plaintiffs' state court case was voluntarily dismissed on June 6, 2006. *See* RJN, Ex. B. Plaintiffs filed in this Court on February 8, 2007, more than one year and five months after the notice of rejection was issued. Plaintiffs therefore failed to comply with the Act's requirements.

Moreover, the doctrine of equitable tolling does not aid plaintiffs here. In order to grant relief under an equitable tolling doctrine, "reasonable promptness in refiling is necessary." *Kolani v. Gluska* 64 Cal. App. 4th 402, 410 (Cal. Ct. App. 1998). "The leading cases finding equitable tolling have involved short intervals between dismissal and refiling," often only a few days. *Id*. at 409 (citations omitted). In *Kolani*, the court said that reasonableness had to be "assessed in light of the 30-day 'grace period' in 28 United States Code section 1367(d)," and held that waiting much more than 30 days was not reasonable. *Id.* at 410. This Court is not aware of any authority which would allow equitable tolling here, where plaintiffs waited eight months to refile. The Court therefore finds that plaintiffs' state-law claims are barred for failure to timely file.

**II.     Absolute Privilege as to State Claims**

In the alternative, defendants argue, and the Court agrees, that the Court should dismiss plaintiffs' state-law claims because defendants are immune from liability under California Civil Code section 47(b). Defendants argue that, under the privileged publication rule, they are entitled to absolute privilege with respect to any efforts to enforce the writ of execution and publish the Notice. A privileged publication is one made in the "proper discharge of an official duty," in any "legislative . . . [or] judicial proceeding," in any other "official proceeding authorized by law," or "in the initiation or course of any other proceeding authorized by law." Cal. Civ. Code § 47. This privilege has been "held applicable to any communication, whether or not it amounts to a publication" and "any publication required or permitted by law in the course of a judicial proceeding . . . even though the publication is made outside the courtroom and no function of the court or its officers is involved." *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1057 (2006) (quoting *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (Cal. 1990)) (quotations and citations omitted). The privilege has been found to apply to abuse of process, defamation, intentional infliction of emotional distress, and negligence. *See Brown v. Kennard*, 94 Cal.

5

1 App. 4th 40, 45 (2001). In *Kennard*, the court found that application for a writ of execution by levy on
2 real property, proceedings to enforce it, the act of carrying out the directive of the writ, and issuance and
3 publication of a Notice of Sheriff's Sale were all protected by the litigation privilege. *See id*. at 49-50.
4 Likewise, in this case, defendants are immune from liability for plaintiff's state-law claims for actions
5 arising out of and in connection with the Writ of Execution. Accordingly, plaintiffs' causes of action
6 one through four must be dismissed.

## III.     Plaintiffs' Equal Protection Claim

Plaintiffs' fifth cause of action is brought under title 42 U.S.C. section 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment. Defendants move to dismiss plaintiffs' fifth cause of action for failure to establish plaintiffs were "treated differently from those similarly situated, and lack of rational basis for the disparate treatment."[3] Motion at 6. To state a claim under section 1983, "the plaintiff must demonstrate that (1) the action occurred 'under color of state law' and (2) the action resulted in the deprivation of a constitutional right or federal statutory right." *See West v. Atkins*, 487 U.S. 42, 48 (1988). To state a claim for a violation of equal protection, plaintiffs must show that there was unequal treatment of persons similarly situated, or that the defendants acted with an intent to discriminate against plaintiffs based on membership in a protected class. *See Washington v. Davis*, 426 U.S. 229, 239-40 (1976); *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001).

> When analyzing a discrimination claim under the Fourteenth Amendment, we must first determine the appropriate level of scrutiny to be applied. If the rule disadvantages a suspect class or impinges upon a fundamental right, the court will examine it by applying a strict scrutiny standard. If no such suspect class or fundamental rights are involved, the conduct or rule must be analyzed under a rational basis test.

*Giannini v. Real*, 911 F.2d 354, 358 (9th Cir. 1990) (citations omitted). Where there is no suspect class or fundamental right involved, "equal protection claims may be brought by a 'class of one,' where plaintiff alleges that [he or] she has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S.

---

[3] Defendants also argue that the bankruptcy case triggered an automatic stay, and equitable tolling extended the time period in which the Writ of Execution could be enforced. Motion at 7:4-6. The Court cannot decide this factual issue on a motion to dismiss.

6

562, 564 (2000); *Squaw Valley Development Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004).

Even where a rational basis is shown, "a plaintiff may pursue an equal protection claim by raising a triable issue of fact as to whether the defendants' asserted rational basis was merely a pretext for differential treatment." *Squaw Valley*, 375 F.3d at 945-46 (internal quotations omitted). An equal protection plaintiff may show pretext by demonstrating either: "(1) the proffered rational basis was objectively false; or (2) the defendant actually acted based on an improper motive." *Id.* at 946. "Where an equal protection claim is based on selective enforcement of valid laws, a plaintiff can show that the defendants' rational basis for selectively enforcing the law is a pretext for an impermissible motive." *Id.* at 944 (internal quotations omitted).

In *Olech* the plaintiff asserted the Village of Willowbrook acted irrationally and wholly arbitrarily in demanding a larger easement from her than from other property owners. *See* 528 U.S. at 563. She also claimed "that the Village's demand was actually motivated by ill will" and was retaliatory in nature. *Id.* Here, plaintiffs' complaint alleges that "defendants' conduct was an irrational and wholly arbitrary action, motivated solely by [a] spiteful effort to retaliate against plaintiffs for their efforts in defending themselves in the underlying action." Complaint ¶ 37. Thus as in *Olech*, plaintiffs' "complaint can be fairly construed as alleging" that they were treated differently from others similarly situated, by adequately alleging irrational and arbitrary treatment. 528 U.S. at 565. These allegations are "sufficient to state a claim for relief under traditional equal protection analysis," quite apart from defendants' subjective motivation. *Id.* Accordingly, the Court DENIES defendants' motion to dismiss plaintiffs' fifth cause of action against all defendants.

**IV.  Defendant Sonoma County Sheriff's Department**

Defendants move to dismiss the section 1983 claims against defendant SCSD for lack of *respondeat superior* liability and failure to allege a *Monell* claim. Motion at 7. A local government may not be sued under title 42 U.S.C. section 1983 for a constitutional violation committed by its employees or agents unless that violation is pursuant to the execution of an official policy or custom. *See Monell v. Dept. of Social Serv.*, 436 U.S. 658, 694 (1978). A plaintiff may demonstrate a policy or custom to support municipal liability in a number of ways. A plaintiff "may prove that a city employee committed

7

the alleged constitutional violation pursuant to a formal governmental policy or a 'longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity.'" *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989)) (internal quotation omitted). In addition, a plaintiff "may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Id.* at 1346-47.

Under the *Monell* standard, a municipality is held liable "only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 403-404 (1997). To meet this standard, plaintiffs must show: (1) that they had a constitutional right; (2) that they were deprived of that right by an adverse action; (3) that the SCSD had a custom created by those who determine official policy; (4) that the custom amounted to at least deliberate indifference to plaintiffs' constitutional rights; and (5) that the custom was the moving force behind the constitutional violation. *See City of Canton v. Harris,* 489 U.S. 378, 389-91 (1989); *Blair v. City of Pomona*, 223 F.3d 1074, 1079 (9th Cir. 2000); *Oviatt v. Pearce,* 954 F.2d 1470, 1474 (9th Cir. 1992).

Plaintiffs do not allege facts sufficient to support *Monell* liability in the complaint. Plaintiffs raise additional facts in the opposition. However, in ruling on a motion to dismiss, the Court cannot take into account claims or evidence raised outside of the complaint. Absent a *Monell* claim, there is no basis for holding the SCSD liable for the actions of its employees in connection with a section 1983 violation. Therefore, the Court DISMISSES the claims against defendant SCSD. Plaintiffs may amend the compliant to allege *Monell* liability, provided there is factual support for such an allegation. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) ("A pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment").

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS defendants' 12(b)(6) motion to dismiss plaintiffs' claims one through four. The Court DENIES defendants' motion to dismiss plaintiffs' section

1983 claims against defendants Elizabeth Warren and Does 1 through 10.  The Court GRANTS defendants' motion to dismiss all claims against defendant Sonoma County Sheriff's Department. The Court GRANTS plaintiffs leave to amend the complaint to attempt to cure the deficiencies described herein.  **Plaintiffs must file any amended complaint by July 16, 2007.**  The case management conference scheduled for July 27, 2007, remains on calendar.  [Docket No. 4]

**IT IS SO ORDERED.**

Dated: June 28, 2007.

SUSAN ILLSTON
United States District Judge